# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 1:10-CR-61-TLS |
| | ) | |
| JORGE ROSAS | ) | |

## OPINION AND ORDER

The Defendant, Jorge Rosas, was charged along with other defendants in a Superseding Indictment for the following drug related offenses: conspiring to distribute and to possess with intent to distribute methamphetamine; five individual methamphetamine distribution counts; and possessing a firearm in furtherance of a drug trafficking crime. The Defendant pled guilty to the charge that he conspired to distribute and to possess with intent to distribute methamphetamine, and was sentenced to 210 months of imprisonment. This matter is before the Court on a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 204].

## ANALYSIS

**A. Plea Agreement Waiver**

The Government argues that the Court should deny the Defendant's Motion because he waived his right to collaterally attack his sentence as part of the Plea Agreement that he voluntarily entered with the Government.

A plea agreement is a type of contract subject to contract law principles tempered by limits that the Constitution places on the criminal process. *See United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005). Courts "enforce a plea agreement's appellate waiver if its terms are

clear and unambiguous and the record shows that the defendant knowingly and voluntarily entered into the agreement." *United States v. Linder*, 530 F.3d 556, 561 (7th Cir. 2008) (quotation marks and citation omitted). "A defendant may validly waive both his right to a direct appeal and his right to collateral review under § 2255 as a part of his plea agreement." *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011) (citing *Jones v. United States*, 167 F.3d 1142, 1144 (7th Cir. 1999)).

Here, the Defendant's waivers of his right to appeal and his right to collaterally attack his conviction and sentence, "including but not limited to, a proceeding under Title 28, United States Code, Section 2255" (Plea Agreement ¶ 8.f), are express and unambiguous. They cite the same provision of the United States Code the Defendant is attempting to use to challenge his sentence. The Seventh Circuit has "generally upheld and enforced these waivers, with limited exceptions for cases in which the plea agreement was involuntary, the district court 'relied on a constitutionally impermissible factor (such as race),' the 'sentence exceeded the statutory maximum,' or the defendant claims 'ineffective assistance of counsel in connection with the negotiation of [the plea] agreement.'" *Keller*, 657 F.3d at 681 (quoting *Jones*, 167 F.3d at 1144–45); *see also Dowell v. United States*, 694 F.3d 898, 902 (7th Cir. 2012). The Defendant does not allege that the Court relied on impermissible factors, such as his race, in selecting his sentence, or that he was sentenced in excess of the statutory maximum for the crime he committed. Thus, the Defendant cannot pursue relief in the present § 2255 motion unless his waiver, or the plea agreement as a whole, was unintelligent or involuntary because of ineffective assistance of counsel or otherwise. *Hurlow v. United States*, 726 F.3d 958, 964–65 (7th Cir. 2013); *see also United States v. Hare*, 269 F.3d 859, 860 (7th Cir. 2001) ("A waiver of appeal is

2

valid, and must be enforced, unless the agreement in which it is contained is annulled (for example, because involuntary)." (citations omitted)).

The Defendant claims that he did not enter the plea agreement knowingly and voluntarily because it was based on his counsel's erroneous advice. A "claim[] that the plea agreement was involuntary or the result of ineffective assistance of counsel . . . concern[s] the validity of the plea agreement and," if it is successful, would "knock out the waiver of appeal along with the rest of the promises." *United States v. Behrman*, 235 F.3d 1049, 1051 (7th Cir. 2000). Here, the Defendant clearly asserts that he would not have agreed to the terms of the Plea Agreement had his counsel correctly advised him of his sentencing exposure, but would have instead moved ahead with a trial. This is sufficient to overcome the collateral review waiver in his Plea Agreement and proceed further with this particular claim.

Seeking to avoid this result and enforce the waiver, the Government points to the Rule 11 colloquy where the Defendant assured the magistrate judge that he understood he was facing a minimum term of imprisonment of ten years, that the drug quantity was between 1.5 and 5 kilograms, that no one had made any promises, assurances, or side agreements that were not in the Plea Agreement to persuade him to accept the Agreement, and that he was satisfied with his attorney's representation and advice. However, "a plea, even one that complies with Rule 11, cannot be 'knowing and voluntary' if it resulted from ineffective assistance of counsel." *Hurlow*, 726 F.3d at 967 (citing *United States v. Jordan*, 870 F.2d 1310, 1317 (7th Cir. 1989)); *see also Keller*, 657 F.3d at 681 (listing involuntariness of the plea agreement and ineffective assistance of counsel in connection with negotiation of plea as separate exceptions to enforcement of collateral review waivers). The fact that the Rule 11 colloquy was without error does not knock

3

out the Defendant's claim. Rather, it is a hurdle the Defendant will need to overcome; his claim will ultimately only be successful on its merits if he shows that his counsel's actions rendered his plea unknowing despite the statements and acknowledgments he made to the magistrate judge. *See United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) (stating that "a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction"). Whether the Defendant will be able to present such compelling reasons is yet to be determined.

The Government also attempts to foreclose this Court's review of the Defendant's claim by invoking the determination by the court of appeals on direct review that the Defendant's plea was knowing and voluntary. The Court concludes that the prior determination does not foreclose review. On appeal, the issue was whether the Defendant could advance a nonfrivolous claim that his guilty plea was deficient under Federal Rule of Criminal Procedure 11. The court determined that the "transcript of the plea colloquy shows that the magistrate judge complied with the requirements of Rule 11." (Notice of Issuance of Mandate, ECF No. 200 at 4.) The Defendant's habeas motion is not a challenge to the plea colloquy itself. The Defendant's claim regarding the voluntariness of his plea is a Sixth Amendment ineffective assistance of counsel claim, which is separate and distinct. *See Hurlow*, 726 F.3d at 967 ("a plea, even one that complies with Rule 11, cannot be 'knowing and voluntary' if it resulted from ineffective assistance of counsel") (citing *Jordan*, 870 F.2d at 1317). Moreover, the court of appeals expressly declined to address any claims regarding the effectiveness of counsel that related directly to the plea agreement or its negotiation "on direct appeal because claims of ineffective assistance are better suited to collateral action under 28 U.S.C. § 2255 so that a fuller record can be developed." (Notice of

4

Issuance of Mandate 4, ECF No. 200.) Although a claim of ineffective assistance of counsel must be presented on direct appeal when the defendant does not offer extrinsic evidence to support the claim, *McCleese v. United States*, 75 F.3d 1174, 1178 (7th Cir. 1996), the Defendant in this case has offered his detailed Affidavit [ECF No. 206] as extrinsic evidence in support of the claim. Accordingly, the proceedings on direct appeal do not foreclose the Defendant's claim.

This Court's conclusion that neither the proceedings on direct appeal nor the waiver in the Defendant's Plea Agreement bar his claim that his guilty plea resulted from ineffective assistance of counsel is not a ruling on the veracity of the Defendant's allegations or on the ultimate outcome of his collateral attack. *See, e.g., United States v. Cieslowski*, 410 F.3d 353 (7th Cir. 2005) (considering the defendant's claim that his decision to enter into the plea agreement was the product of his attorney's ineffectiveness because the claim was the sort that, "if successful, would result in setting aside the plea agreement as a whole," *id.* at 361, but ultimately rejecting the defendant's ineffective assistance of counsel argument on the merits).

**B.     Evidentiary Hearing**

*1.     Standard*

"The court should grant an evidentiary hearing on a § 2255 motion when the petitioner alleges facts that, if proven, would entitle him to relief." *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009) (internal quotation marks omitted); *see also Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006) ("[A] district court *must* grant an evidentiary hearing when the petitioner alleges facts that, if proven, would entitle him to relief.") (internal quotations omitted). However, if "the motion and the files and records of the case conclusively show that the prisoner

is entitled to no relief" then a hearing is not required. *Kafo*, 467 F.3d at 1067. A motion for habeas relief must include an affidavit setting forth the specific facts that support the defendant's assertions. *Id.*

The Sixth Amendment provides criminal defendants the right to counsel. U.S. Const. amend. VI. Claims of ineffective assistance of counsel are governed by the two–pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim, the Defendant must first show the specific acts or omissions of his attorney "fell below an objective standard of reasonableness" and were "outside the wide range of professionally competent assistance." *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688, 690); *see also Hardamon v. United States*, 319 F.3d 943, 948 (7th Cir. 2003); *Anderson v. Sternes*, 243 F.3d 1049, 1057 (7th Cir. 2001).

The second *Strickland* prong requires the Defendant to show prejudice, which entails showing by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Benefiel v. Davis*, 357 F.3d 655, 661 (7th Cir. 2004). "To demonstrate prejudice arising from a guilty plea allegedly rendered involuntary by counsel's deficient performance, a petitioner must establish that counsel's performance was objectively unreasonable and that, but for counsel's erroneous advice, he would not have pleaded guilty." *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000) (citing *United States v. Martinez*, 169 F.3d 1049, 1052–53 (7th Cir. 1999)); *see also Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (noting that with respect to plea bargains, *Strickland* prejudice prong requires the defendant to show that counsel's constitutionally ineffective performance affected the outcome of the plea process); *Hill v. Lockhart*, 474 U.S. 52,

59 (1985). To make that showing, the petitioner must do more than simply allege "that he would have insisted on going to trial"; he must also come forward with objective evidence that he would not have pled guilty. *Cieslowski*, 410 F.3d at 359. Objective evidence includes the nature of the misinformation provided by the attorney to the defendant and the history of plea negotiations. *See Julian v. Bartley*, 495 F.3d 487, 499 (7th Cir. 2007).

2.   *Alleged Facts*

The Defendant explains, by way of Affidavit, the Government's attempts to obtain information from him about the drug operation he was involved with, and the interactions with his various attorneys throughout the process. Attorney Linda Wagoner was his appointed counsel, but his family later hired Benjamin Baselic (actually an investigator) and Attorney Mario Rivas, both from California. The Defendant maintains that Rivas met him at the jail, told him his case was difficult, the Government was upset that he was not cooperating, and that he was facing many years in prison. A few months later, on January 6, 2011, the Defendant was transported to meet with Rivas, Baselic, Government counsel, and FBI agents. Baselic told the Defendant they would be going into the courtroom for his court hearing shortly, but that the meeting was actually a debriefing and there was no scheduled court appearance. Before the meeting, the Defendant had not anticipated cooperating with the Government. Before asking questions, Government counsel advised that the Defendant's offense level would begin at 36 under the Guidelines. Baselic stated that he disagreed, and that the Defendant would begin at

7

level 32. No further discussion was had regarding the applicable offense level.[1] The Defendant signed a document that Rivas explained was a guarantee that if he went to trial, nothing that he said during the interview could be held against him. The Defendant proceeded with proffers on January 6 and 7, 2011.

Sometime in the next two months, the Defendant communicated with Baselic, who told the Defendant that he did not know what saint the Defendant had prayed to, because everything was turning out very good. Baselic told the Defendant that the firearm charge was being dismissed, that he had been facing 9 years before the dismissal, and was now facing up to 5 years after his cooperation with the Government was factored in. On June 15, 2011, Wagoner and an interpreter met with the Defendant at the jail to present him with a plea agreement. Wagoner stated she was not happy with the agreement's appellate waiver, or with the stipulation to between 1.4 and 5 kilograms of methamphetamine. She noted that she had not been at the proffer meetings, and had not been able to contact Rivas or Baselic to know how the waiver and drug amount terms came about. The Defendant questioned why the Plea Agreement contained a term that set his offense level between 10 years and life imprisonment.[2] Wagoner stated that she

---

[1] The Presentence Investigation Report prepared for the Defendant assigned a base offense level of 32 based on a quantity of drugs between 500 grams and 1.5 kilograms of methamphetamine. However, several Guideline enhancements were applied: 2 points because a dangerous weapon was possessed; 2 points for maintaining a premises for the purpose of manufacturing or distributing a controlled substance; 2 points for an aggravating role; 2 points for involving his girlfriend and friend who received little to no compensation or were aware of the scope and structure of the enterprise; and 2 points for committing the offense as part of a pattern of criminal conduct engaged in as a livelihood. Adjusting the offense level for the Defendant's acceptance of responsibility resulted in a total offense level of 39.

[2] This presumably refers to paragraph 8.b. of the Plea Agreement, which states the Defendant's understanding that the maximum possible penalties that may be imposed upon him for his conviction was "imprisonment of not less that 10 years and not more than life." (Plea Agreement ¶ 8.b., ECF No. 101.) It is the only provision in the Plea Agreement that references a specific term of imprisonment.

would not have been able to get the firearm charge dismissed. She also told him it was not worth disputing the provision because he was going to receive much less than 10 years due to his cooperation with the Government. The Defendant asked Wagoner what would happen if he did not sign the Plea Agreement until after speaking with Rivas or Baselic. He expressed his confusion with the 10 year to life term, as Baselic had assured him he was facing 5 to 7 years. Wagoner told the Defendant that if he did not sign the Plea Agreement, he would have to proceed to trial and would be exposed to a life sentence if found guilty.

The Defendant was not able to contact Rivas or Baselic and signed the Plea Agreement. On June 24, the Defendant participated in a change of plea hearing with Rivas and Baselic present. He met with Government counsel, who indicated the Government was considering filing a Rule 35 letter at a later date. The Defendant told Baselic he was not aware that either provision he discussed with Wagoner would be in the Plea Agreement and wanted the provisions removed or to withdraw from the Plea Agreement. The Defendant maintains that Baselic told him not to worry about the terms, Baeslic had everything under control, that the Government would only agree to a sentence under 10 years at sentencing if the terms were included, and that with his cooperation he was looking at a sentence of 5 to 7 years. Based on these assurances, the Defendant did not seek to withdraw from the Plea Agreement, and completed the change of plea.

Later, the Defendant, still worried about the drug amount stipulation and the appellate waiver, attempted to contact Baselic and Rivas, but was not successful. On June 30, he met with the United States Probation Officer, Wagoner, and an interpreter. Although Baselic had told the Defendant during the change of plea hearing that he would be present at the probation interview, he was not present. Wagoner stated she had not been able to reach Baselic or Rivas.

On August 17, the Defendant received a letter from Wagoner indicating that she was requesting to be withdrawn as his counsel. In a second letter, she again stated that she had been unable to reach Rivas or Baselic, and that neither of them were returning her messages. She wrote that Rivas and Baselic had not yet submitted a proffer letter to the probation officer on his behalf.

The Defendant eventually reached Baselic by telephone. Baselic told the Defendant that everything was going according to plan, and that he would down to level 24 on the basis of his cooperation. On December 16, the Defendant called Baselic, who told him he would be sentenced on December 19. Baselic assured the Defendant that he was facing 5 to 7 years, and that Rivas would be coming to talk to him before his sentencing.

According to the Defendant, Rivas talked to him only three minutes before his sentencing. Rivas told the Defendant that he was going to be sentenced between 5 and 7 years, according to the PSR and his cooperation. The Defendant asked to see a copy of his PSR. Rivas did not have one with him, but retrieved a copy from Government counsel's table. Rivas went through the PSR quickly, and then instructed the Defendant to answer in the affirmative and agree with the Judge's questioning. Rivas wrote "yes" and "no" on a piece of paper and directed the Defendant which one to answer when the time came.

The Defendant was sentenced to 210 months (17.5 years) of prison, the low end of the advisory Guideline range after a 2-level departure for his cooperation. It appears that the Defendant did not realize that the 210 month sentence already accounted for his cooperation, as

he still believes that he did not receive any benefit for his cooperation.[3] According to the Defendant, he did not understand that his imprisonment range would be impacted by Guideline enhancements, because these enhancements were never discussed with him or presented in his Plea Agreement. Surprised by his sentence, the Defendant asked Rivas to file an appeal. The Defendant later contacted Baselic, who acted surprised at the length of the sentence, but advised that if the Defendant appealed, he could receive a higher sentence. Because Rivas would not file an appeal, the Defendant filed one himself.

On appeal, his new counsel asserted that the appeal was frivolous and asked to withdraw under *Anders v. California*, 386 U.S. 738, 744 (1967). The Court granted appellate counsel's motion to withdraw and dismissed the appeal.

3. *Analysis*

In consideration of whether counsel's advice constituted ineffective assistance in the plea agreement context, the Seventh Circuit has identified the following criteria:

> A reasonably competent counsel will attempt to learn all of the facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis before allowing his client to plead guilty. *United States v. Barnes*, 83 F.3d 934, 939 (7th Cir. 1996). "Although the attorney's analysis need not provide a precisely accurate prediction of the respective consequences of pleading guilty or going to trial, the scrutiny must be undertaken in good faith." *Id.* at 939–40.

*Moore v. Bryant*, 348 F.3d 238, 241 (7th Cir. 2003). An attorney's miscalculation, standing alone, cannot demonstrate deficient performance "unless the inaccurate advice resulted from the

---

[3]The Defendant received a departure under U.S.S.G. § 5K1.1 upon the Court's acceptance of an agreed motion. The Court granted the motion is a sealed proceeding with parties' counsel conducted immediately prior to the sentencing hearing. The Defendant did not participate in person in the sealed proceedings conducted in chambers.

11

attorney's failure to undertake a good-faith analysis of all of the relevant facts and applicable legal principles." *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000); *see also United States v. Barnes*, 83 F.3d 934, 940 (7th Cir. 1996) ("A gross mischaracterization of the sentencing consequences of a plea may provide a strong indication of deficient performance, but it is not proof of a deficiency."). "To rise to a constitutional violation, there must be . . . evidence . . . of the attorney's lack of a good-faith effort to discover and analyze relevant facts and discuss them with the client." *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir.1999).

According to the Defendant, his counsel believed that his offense level would begin at 32, despite the Government's assertion of a starting point of 36, and additionally advised the Defendant that he would face 5 to 7 years of imprisonment, despite the statutory provision for a term of imprisonment between 10 years and life. There is no indication in the record whether counsel made these determinations based on a good-faith analysis of all the relevant sentencing factors and applicable legal principles. Thus, a hearing is required to develop the record on this point. *See, e.g., Bethel v. United States*, 458 F.3d 711, 717 (7th Cir. 2006) (noting that because the district court did not hold a hearing, the record was wholly undeveloped on the issue of the efforts counsel undertook to estimate the defendant's sentence before advising him to plead guilty).

With regard to the second *Strickland* prong, there is also sufficient evidence in the record to proceed. That the Defendant's potential exposure was much higher than the sentence his counsel predicted (or assured) greatly concerned the Defendant, as he pointedly discussed it on several occasions with his counsel in connection with his Plea Agreement. The record suggests that the choices offered to the Defendant were to accept the Plea Agreement and face 5 to 7 years

of imprisonment, or to reject the Plea Agreement and potentially face life imprisonment. Counsel's failure to anticipate or inform the Defendant that he could receive 17.5 years even after entering the Plea Agreement and providing cooperation, and potentially promising, on the other hand, that he would receive 5 to 7, is the type of information that is likely to impact a plea decision. The Defendant's comments throughout the plea colloquy must be considered against the backdrop of counsel's assurances of leniency, if such assurances were actually made. The Defendant's Motion is viewed in light of counsel's alleged mischaracterization of the starting point of his Guideline range, and the consequences of his plea and his cooperation on the potential term of imprisonment he was facing.

On the whole, the record and the Defendant's allegations regarding the disparity between the predicted and actual sentence require an evidentiary hearing to determine whether counsel offered constitutionally deficient advice that impacted whether the Defendant's guilty plea was knowing, and whether defendant can show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

**C.    Remaining Claims**

The Defendant complains that his Sixth Amendment right to effective assistance of counsel was violated when his trial attorney did not object to sentencing enhancements, failed to present mitigating arguments pursuant to 18 U.S.C. § 3553(a), did not object to the use of proffer statements to enhance the drug quantity, and waived his presence at a sentencing conference, and when his appellate counsel failed to raise a meritorious claim on appeal. The Defendant's claims that trial and appellate counsel rendered ineffective assistance with respect to his sentence and his

appeal have nothing to do with the negotiation of the plea agreement, and are thus barred by the waiver contained in his Plea Agreement. *See, e.g., Bridgeman*, 229 F.3d at 593 (stating that ineffective assistance of counsel claims that relate to anything other than plea negotiation, for example, those related to counsel's performance at sentencing, are barred by an enforceable waiver); *Mason v. United States,* 211 F.3d 1065, 1069 (7th Cir. 2000) (finding that because the defendant's ineffective assistance of counsel claim related only to counsel's performance with respect to sentencing, it had nothing to do with the issue of a deficient negotiation of the waiver and was barred by a waiver). If the first ground of the Defendant's Motion is successful, it will be unnecessary to pursue these claims because the conviction will be vacated. If the first ground is found to be without merit, the waiver will remain intact as a bar to these claims.

## APPOINTMENT OF COUNSEL

Title 18 of the United States Code, § 3006A, provides for appointment of counsel to a financially eligible person who is seeking relief under § 2255 where "the court determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B); *see also Winsett v. Washington*, 130 F.3d 269, 281 (7th Cir. 1997) (stating that appointment of counsel in habeas corpus cases is a power commended to the discretion of the district court in all but the most extraordinary of circumstances). An exception to the court's discretion to appoint counsel exists when an evidentiary hearing is required; in that circumstance, the court must appoint counsel. *See* Rule 8(c), Rules Governing Section 2255 Cases in the United States District Courts.

## CONCLUSION

For the reasons stated above, the Court determines that Ground One of the Defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 204] requires an evidentiary hearing to further develop the record, and Ground One remains under advisement. The Defendant is referred to the Federal Community Defenders' Office for the appointment of counsel, with the recommendation for a Spanish speaking attorney. Upon the appointment of counsel, the Court will schedule a telephonic status/scheduling conference. The remaining grounds of the Defendant's Motion [ECF No. 204] are denied.

SO ORDERED on May 27, 2014.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION